BAKER, NEWELL & WALLACE v. H. C. BREM et al.

*Judge's Charge—Demurrer to Evidence—Warranty, Action on—Surety and Principal.*

1. In an action for the recovery, as damages, of the price of an article of personal property, which, it was alleged, and proof offered to show, was sold, with other property, to the plaintiff, *all guaranteed to be first-class*, and that the article was returned as not first-class to defendant, by his instructions, and these facts being controverted, and the issues, was the article first-class, and what damages, if any, has plaintiff sustained? *Held*, that instructions to the jury, that if they believed the evidence, the plaintiff was not entitled to recover, would have been *impertinent*, it being the province of the jury to pass upon the issues, and of the Court to determine upon the right of recovery from the facts found.

2. In such case the proper way to raise the question of plaintiff's right to recover was to demur to the sufficiency of the evidence, as explained in the dissenting opinion in *McCanless* v. *Flinchum*, 98 N. C., 358.

3. It was proper to instruct the jury, that if the article was returned to the defendant as unfit for its intended uses, under his instructions, it was a rescission *pro tanto* of the contract, and plaintiff was entitled to recover the amount he had agreed to pay for the same, it appearing that his note covering the amount had been assigned, before maturity, to an innocent third party.

4. Plaintiff having been sued by the endorsee of his note, and judgment obtained against him, the endorser is sufficiently protected against his suretyship for plaintiff by a stay of execution of plaintiff's judgment against him, on his guaranty of the article for which the note was given, until plaintiff has satisfied the endorsee's judgment.

CIVIL ACTION, tried before *Boykin, J.*, at February Term, 1888, of the Superior Court of MECKLENBURG.

The action was begun August 15, 1885, and the complaint, filed on oath, alleges that the plaintiffs, J. R. Newell, N. W. Wallace and I. R. Baker, intestates of the plaintiff M. E. Baker and L. W. S. Taylor, entered into an agreement with the defendants H. E Brem and F. B. McDowell, constituting the partnership firm of Brem & McDowell, agents of the Watertown Engine Co., in this form:

BAKER *v.* BREM.

" An agreement, made and entered into by and between Brem & McDowell, of Charlotte, N. C., agents for Watertown Engine Co., and Baker, Newell and Wallace, of the other part, witnesseth :

" That the said Brem & McDowell agree to furnish the said Baker, Newell & Wallace the following : One No. 4 mounted engine, for six hundred and ninety dollars, one No. 3-4 wheel separator, for two hundred and ten dollars, one belt 90 feet for ten dollars, total nine hundred and ten dollars ($910), all guaranteed to be first-class machinery, and engine to give full six-horse power, to be ready at Charlotte, on or about the 2d day of July, 1883, for the consideration of the payment of nine hundred and ten dollars, as follows : Four hundred and fifty-five dollars, payable October 15, 1883, without interest, and four hundred and fifty-five dollars October 15, 1884, at interest at eight per cent. per annum from July 2, 1883.

"Note to bear even date with bill lading, at interest at eight per cent. per annum from July 2, 1883.

"The condition of the above contract is, that the legal title and right to the above described property is to remain to be vested in Brem & McDowell, Charlotte, N. C., until all deferred payments or notes are fully paid ; and in default of any or all of the payments for said property, as agreed, you or your agent may, without process of law, take possession and remove said property, and retain any payment that may have been made on account of said property, in lieu of its use or of charges and damages on same. This order constitutes and contains the only agreements made in relation thereto, verbal statements to the contrary notwithstanding.

"In witness whereof, the parties hereunto have set their hands, this 2d day of July, A. D. 1883.

| | | |
|---|---|---|
| | BREM & McDOWELL, | [L. S.] |
| Shipping Address: | J. R. BAKER, | [L. S.] |
| | J. A. NEWELL, | [L. S.] |
| ------------------------- | N. W. WALLACE. | [L. S.] " |

3. That shortly thereafter N. W. Wallace executed and delivered to Brem & McDowell the two following described papers, to-wit:

"$455.　　　　　CHARLOTTE, N. C., July 2, 1883.

"On the 15th October, 1883, we promise to pay to Brem & McDowell, or order, four hundred and fifty-five dollars, for value received, negotiable and payable at the Commercial National Bank, of Charlotte, N. C., with interest after maturity at the rate of eight per cent. per annum until paid, for money loaned.

"Due Oct. 18, '83.　　　BAKER, NEWELL & WALLACE."

Another note of same date and tenor, payable October 15, 1884.

4. That J. R. Baker has since died, and M. E. Baker and L. W. S. Taylor administered on his estate; that the defendant, in pursuance of the said contract, delivered to the plaintiffs Newell & Wallace, and the plaintiffs Baker & Taylor's intestate, J. R. Baker, an engine and separator (or threshing machine).

5. That the engine was satisfactory, and plaintiffs paid for it as agreed in said contract.

6. That the separator or threshing machine was not satisfactory, but was an inferior machine, and not suited to the work intended to be done by first-class machines.

7. That the plaintiffs so reported to the defendants, and at their solicitation kept the machine on trial for about eight or ten days, when, finding that it would not serve the purpose or do the work of a first-class machine, plaintiffs, under instruction of defendants, returned the machine to the defendants.

8. That plaintiffs paid in full for the engine, under the contract, and have since been sued by the Watertown National Bank, and judgment rendered against them, in a Justice's Court, for the full amount of the machine, alleging

that the paper-writing signed by N. W. Wallace was a negotiable paper, and assigned to it, the Watertown National Bank, for value, before due, and without notice.

9. That by reason of the failure of defendants to comply with their contract, the plaintiffs have been damaged in the sum of three hundred dollars.

Wherefore, plaintiffs demand judgment:

1. For the sum of three hundred dollars damages.

2. For costs of action.

The answer of the defendants, also sworn, admits the allegations contained in the first five articles of the complaint, and controverts those made in the residue of the complaint, giving a different version of the facts therein stated, except as to the pleadings, admitting the allegations in article eight, and denying those made in article nine.

It also sets up matters constituting a counter-claim, which it is unnecessary to mention, as it is eliminated from the controversy which the defendants' appeal brings up for determination.

At Spring Term, 1888, after successive continuances, the cause came on for trial, before the jury, of certain issues raised by the pleadings, which, and the responses thereto, are as follows:

1. " Was the separator described in the complaint a first-class piece of machinery?" The jury say, " No."

2. " What damage, if any, have the plaintiffs sustained?" The jury respond, " Two hundred and ten dollars and interest."

The record shows no exceptions to the admission or rejection of evidence offered or refused during the examination of witnesses, or to the reception of documentary proofs, the assignment of error being to the refusal to give the instructions asked for defendants, and in the directions which, instead, were given.

There was no complaint as to the machine, but the plaintiffs claimed, and introduced witness to prove, that the separator, called by them the thresher, was not, as guaranteed in the contract to be, "*first-class machinery*," and did not perform its work properly; and that, in consequence, it had been returned to the defendants. Opposing testimony was offered by the defendants, both as to the quality of the article and its return to and acceptance by them.

It appears that the purchase money embraced in the notes has all been paid but the $210, the price of the separator, with the accruing interest, the note containing which was endorsed by the defendants, before maturity, to their principal, the Watertown Engine Co, and by it to the Watertown National Bank. For this contested balance suit was brought in January, 1885, against the original makers of the note, in the Court of a Justice of the Peace, and the liabilities of the defendants to the endorsee denied. Judgment was recovered in the action, from which an appeal was taken, and execution stayed, by the filing of a justified undertaking to secure the debt and costs, if recovered in the Superior Court. It was there tried, and the residue due on the note, $276.74, recovered, at the same term at which was tried the action now under consideration.

The defendants requested his Honor to instruct the jury as follows:

" 1. That if the jury believe the evidence, the plaintiffs are not entitled to recover.

" 2. That the plaintiffs, not having paid the purchase money, are not entitled to recover any damages."

These instructions were refused, and defendants excepted.

His Honor instructed the jury as follows:

" That, by the terms of the contract set out in the complaint, the defendants warranted the machine to be a first-class machine; that if the jury should find that the machine was not first-class, and if the machine was returned under

the instructions of the defendants, then the plaintiffs would be entitled to recover $210, the amount agreed to be paid for the same; but that, if the machine was not returned under the instructions of ˙defendants, then the plaintiffs would be entitled to recover the difference between the value of the machine, as warranted, and the value as it was."

The Court then instructed the jury as to what constituted a first-class machine, as to which there was no exception.

The jury responded to the issues in favor of the plaintiffs, as set out in the record, assessing damages at $210.

Motion by defendants for a new trial. Motion refused.

Judgment for the plaintiffs, from which defendants excepted and appealed, and assigned the following errors:

1. That his Honor refused the instructions prayed for by plaintiffs, as set out above.

2. For error in charging the jury that, by the terms of the contract set out in the complaint, the defendants warranted the machine to be a first-class machine.

3. For error in charging the jury that, if the machine was not a first class machine, and if the defendants instructed plaintiffs to return the machine, then the plaintiffs would be entitled to recover the amount ($210) agreed to be paid for same.

4. For error in charging the jury that, if the machine was not a first-class machine, and if it was not returned under instructions from the defendants, then the plaintiffs would be entitled to recover the difference between the value of the machine, as warranted, and its value as it was.

No counsel for the plaintiffs.

*Messrs. H. C. Jones* and *C. W. Tillett*, for the defendants.

SMITH, C. J. (after stating the case). We again call attention to the form of the instructions and their inappropriateness to the issues before the jury. The inquiry before

them was as to the quality of the separator and its fitness for the purpose of cleansing small grain from the straw, for which it was bought, and whether it was, as represented, a first-class article, and if not, the compensatory damages due to the plaintiffs; and to either inquiry of fact, the instruction was wholly impertinent. The jury were not to pass upon the plaintiffs' right of action, but to accertain the facts, and then upon the whole case it became a question of law, to be determined by the Court in rendering judgment. The proper mode of raising the question as to the right of recovery was to demur to the sufficiency of the evidence adduced, assuming the facts to be as the jury would be warranted in finding them for the plaintiffs, to authorize judgment for them. The practice, in the case of such demurrer, not unlike a motion for a nonsuit at the close of the plaintiff's evidence, is explained in the writer's dissenting opinion in *McCanless* v. *Flinchum*, 98 N. C., 358. There would be no error, then, in declining to tell the jury that, taking all the evidence together, the plaintiffs could not recover—that is, could not have judgment, for with the results of their finding they had nothing to do, but only to respond to the inquiries submitted. The present practice undertakes, so far as it is practicable—unlike that of which it takes the place—to separate the facts from the law, the jury finding the one, when in dispute, the Court determining the law upon the facts ascertained by the jury and those admitted. But the point intended is reached in the instructions given and the exceptions taken to them. If these are correct in law, and the jury not misled, the verdict must stand with the judgment authorized by it.

In our opinion, the law was properly expounded, and no error is found in the directions under which the jury were led in arriving at their verdict. If the separator was returned to the defendants as unfit for its intended uses, under their instructions, it was a rescission *pro tanto* of the

contract, as much so as if it had not been included therein, and the obligation to return the purchase money, if it had been paid, or to enter a corresponding credit upon the note, which would have extinguished the debt, if it had not been, would be the result. But the defendants, not retaining possession of the note, transferred it, by endorsement before maturity, to an innocent holder, unaware of any infirmity, and thus put it out of their power to make the credit themselves and the power of the plaintiffs to be relieved, as, notwithstanding resistance to the judgment, was determined in the action of the endorsee bank. They cannot find relief from the judgment recovered by the bank, which discounted the note before it became due, and their only recourse is to the payees, who have converted the security to their own use and subjected the plaintiffs, to whom the money ought to be refunded, to the necessity of meeting the judgment against them. As a transaction between the parties to the contract, the return of the purchase money assumed a legal obligation, created by the very act of the surrender and receiving back of the instrument. The contention of the defendants, based largely on the case of *Osborne* v. *Gants*, 60 N. Y., 540, is not supported by the ruling in that case, which simply decides, that in an agreement concerning stipulations, interdependent and mutual, one cannot recover without performance of his contract, or an offer to do it, and that a warranty of quality is an incident only of an executed contract of sale, passing title to the thing sold.

The instruction applies, and such the verdict shows was the understanding of the jury in rendering it, to the case of an instrument, not such as represented and guaranteed, returned, by their direction, to the guarantors, and by them received—in legal effect a rescission of the contract so far as it refers to the defective article—restoring it to the defendants and binding them to restore the sum to be paid for it to the plaintiffs.

We do not appreciate the force of the objection based upon the fact that, as endorsers, the defendants became liable as sureties to the holder to the plaintiffs' whole cause of action. If the distinction prevailed, as formerly, between suits at law and suits in equity, it is obvious this, in an action at law, was indispensable in order to show a breach of contract and the damages consequent on it; and then, if the present plaintiffs were insolvent, the defendants' equity would be to restrain the enforcement of the judgment until the sureties were exonerated from their liability as such. In such case the defendants would be allowed to retain their indebtedness as an indemnity against loss by reason of their suretyship. The principle which regards the surety as a principal in such case is declared in *Williams* v. *Washington,* 1 Dev. Eq., 137; *Williams* v. *Helme, ibid.,* 151; *Walker* v. *Dicks,* 80 N. C., 263; *Scott* v. *Timberlake,* 83 N. C., 382.

It does not appear that as endorsers the defendants have been sued, and the judgment for the amount due on the note, against the plaintiffs, seems to have had the additional security furnished by the *supersedeas* appeal undertaking.

But whatever may be the hazard existing, and voluntarily assumed, without the plaintiffs' privity and for the defendants' sole benefit, in effecting the discount, the issuing of the execution is restrained, as would a court of equity interfere by an injunction in case of threatened loss, until the defendants are relieved of their liability upon the note. At least, the appellants have no just cause of complaint, in that they are fully protected against contingent loss by the stay of execution. This is another instance shown of the full protection afforded litigants, in the double exercise of legal and equitable functions, in a single suit, which formerly required two.

No error.                                          Affirmed.